1  Brendan Dolan (SBN 126732)
   Emily E. de Ayora (SBN 250349)
2  KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
   Email:  bdolan@kasowitz.com
3  101 California Street, Suite 2300
   San Francisco, CA 94111
4  Telephone:  (415) 421-6140
   Facsimile:  (415) 398-5030
5
   Sheron Korpus (New York State Bar # 2810372)
6  Christine A. Montenegro (New York State Bar # 3969276)
   David Rosner (New York State Bar # 2333755)
7  Matthew B. Stein (New York State Bar # 4179479)
   KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
8  1633 Broadway
   New York, New York 10019
9  Telephone:  (212) 506-1700
   Facsimile:  (212) 506-1800
10 Email:  skorpus@kasowitz.com
           cmontenegro@kasowitz.com
11         drosner@kasowitz.com
           mstein@kasowitz.com
12
   Attorneys for Plaintiffs

13

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEUTSCHE BANK TRUST COMPANY AMERICAS, in its capacity as successor indenture trustee for certain series of Senior Notes, LAW DEBENTURE TRUST COMPANY OF NEW YORK, in its capacity as successor indenture trustee for certain series of Senior Notes, and WILMINGTON TRUST COMPANY, in its capacity as successor indenture trustee for the PHONES Notes, <br><br> Plaintiff, <br><br> v. <br><br> WELLS FARGO BANK, N.A. and WACHOVIA BANK f/k/a WACHOVIA N.A., <br><br> Defendants. | Case No: CV 11-2661-EMC <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION TO STAY DEFENDANTS' TIME TO RESPOND TO THE COMPLAINT IN THIS ACTION OR COMMENCE MOTIONS PRACTICE, UNTIL THE EARLIEST OF (1) OCTOBER 31, 2011, (2) CONFIRMATION OF A PLAN OF REORGANIZATION BY THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE, OR (3) FURTHER ORDER OF UNITED STATES BANKRUPTCY COURT OR THIS COURT** <br><br> Complaint Filed: June 2, 2011 <br><br> Hearing Date: August 12, 2011 <br> Hearing Time: 1:30 p.m. <br> Courtroom: 5 |

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

1

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................... 1

FACTUAL BACKGROUND ...................................................................................................... 4

      A.    The Tribune Bankruptcy Proceeding and the Competing Plans of
           Reorganization ................................................................................................... 4

      B.    The SLCFC Order and Commencement of Plaintiffs' 50 Actions ............................ 6

ARGUMENT ............................................................................................................................ 8

I.     The Litigation Over Tribune's Plan Confirmation Substantially Impacts This
      Action, and the SLCFC Order Requiring The Stay Should Be Given Due Deference ........ 8

II.    The Stay Is Appropriate Given Plaintiffs' Forthcoming MDL Motion ............................... 9

      A.    The Stay Will Conserve Judicial Resources .......................................................... 10

      B.    The Balance of Harms Favors Granting the Requested Stay .................................. 11

III.   Plaintiffs Should Be Permitted To File A Rule 26(d)(1) Motion Seeking Leave To
      Conduct Limited Discovery to Confirm That All Proper Parties Have Been
      Identified, Named, And Served with Process During the Pendency of The Stay ............... 12

IV.   Should The Court Deny The Stay Motion, Plaintiffs Request That Defendants Be
      Prevented From Filing Any Answers Or Other Pleadings Responsive To The
      Complaint Until Such Time As The Parties Have Convened For A Case
      Management Conference And The Court Enters A Case Management Order ................... 14

CONCLUSION ...................................................................................................................... 15

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

i

1

# **TABLE OF AUTHORITIES**

2 **Cases** **Page(s)**

3
*Good v. Prudential Ins. Co. of Am.*,
4    5 F. Supp. 2d 804 (N. D. Cal. 1998) .......................................................................... 9

5 *In re Integrated Agric. Inc.*,
   313 B.R. 419 (Bankr. C.D. Ill. 2004) ...................................................................... 5
6

7 *In re Lehman Bros. Holdings, Inc., Sec. & Emp. Ret. Income Sec. Act (ERISA)*,
   598 F. Supp. 2d 1362 (J.P.M.L. 2009) .................................................................. 10

8 *In re NorthStar Educ. Fin. Inc.*,
   588 F. Supp. 2d 1370 (J.P.M.L. Dec. 3, 2008) ...................................................... 10
9

10 *In re U.S. Fin. Sec. Litig.*,
   375 F. Supp. 1403 (J.P.M.L. 1974) ....................................................................... 10
11

12 *In re Upjohn Co. Antibiotic Cleocin Prods. Liab Litig.*,
   81 F.R.D. 482 (E.D. Mich. 1979)........................................................................... 11

13 *IO Group, Inc. v. Doe*,
   Case No. 10-4377 SC, 2010 U.S. Dist. LEXIS 114039 (N.D. Cal. Oct. 15, 2010) ............... 13
14

15 *Leyva v. Certified Grocers of California, Ltd.*,
   593 F.2d 857 (9th Cir. 1979)................................................................................... 8

16 *Microsoft Corp. v. TiVo Inc.*,
17    Case No. 10-CV-00240-LHK, 2011 U.S. Dist. LEXIS 52619 (N.D. Cal. May 6, 2011) ....... 12

18 *Nielson v. Merck & Co.*,
   No. C 07-00077 WHA, 2007 U.S. Dist. LEXIS 21438 (N.D. Cal. Mar. 8, 2007).................. 11
19

20 *Nielson v. Merck & Co.*,
   No. C07-00076 MJJ, 2007 U.S. Dist. LEXIS 21250 (N.D. Cal. 2007) ................................. 11

21 *Rivers v. The Walt Disney Co.*,
22    980 F. Supp. 1358 (C.D. Cal 1997).......................................................................... 9, 10, 11

23 *Sequoia Forestkeeper and Earth Island Inst. v. U.S. Forest Service*,
   Case No. CV F 07-1690 LJO DLB, 2008 U.S. Dist. LEXIS 40922 (E.D. Cal. 2008)........ 8, 12
24

25 *United States v. One Hewlett Packard Pavilion Laptop*,
   No. C 09-02664 WHA, 2009 U.S. Dist. LEXIS 92489 (N.D. Cal. 2009) ............................. 12

26 *VPR Int. v. Does 1-17*,
27    Case No. C 11-01494 LB, 2011 U.S. Dist. LEXIS 45118 (N.D. Cal. Apr. 15, 2011)............ 13

ii

28

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

**STATUTES**

11 U.S.C.S. § 362(a) ........................................................................................... 2, 13

11 U.S.C.S. § 546 ............................................................................................... 5, 8, 9

28 U.S.C. § 1407 ..................................................................................................... 9

**OTHER AUTHORITIES**

Fed. R. Civ. P. 15 ................................................................................................. 14

Fed. R. Civ. P. 21(d) ............................................................................................. 15

Fed. R. Civ. P. 26(d)(1) ................................................................................. passim

Fed. R. Civ. P. 26(f) ............................................................................................. 13

Fed. R. Civ. P. 41(c) ............................................................................................. 14

K A S O W I T Z ,   B E N S O N ,   T O R R E S   &   F R I E D M A N   L L P
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

iii

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

As directed by the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), and as set forth in the SLCFC Order (defined below), Plaintiffs Deutsche Bank Trust Company Americas in its capacity as successor indenture trustee for a certain series of Senior Notes ("DBTCA"), Law Debenture Trust Company of New York, in its capacity as successor indenture trustee for a certain series of Senior Notes ("Law Debenture"), and Wilmington Trust Company, in its capacity as successor indenture trustee for the PHONES Notes ("Wilmington Trust" and, together with DBTCA and Law Debenture, "Plaintiffs"), hereby request that the Court stay the time for Defendants to respond to the Complaint or commence motion practice in this action (the "Stay") until the earlier of (i) October 31, 2011, without prejudice to any further motion by Plaintiffs to alter or otherwise extend the Stay, (ii) further order by the Bankruptcy Court in the Tribune Company's ("Tribune") chapter 11 proceedings (the "Bankruptcy Proceeding") (Case No. 08-13141 (KJC)) confirming a plan of reorganization, or (iii) further Order of the Bankruptcy Court or this Court. The requested Stay will benefit all the parties in interest to this action as well as the Court.

## PRELIMINARY STATEMENT

This litigation arises from the failed leveraged buyout of Tribune in 2007 (the "LBO"). This transaction was described by financial and industry analysts at the time as one of the most highly leveraged and ill-advised in history. Compl., ¶ 1. Despite Tribune's declining business, pursuant to the LBO, Tribune paid its former shareholders over $8 billion in cash at the expense of Tribune's existing creditors, and precipitated the company's descent into bankruptcy shortly thereafter. *Id.* In this action, Plaintiffs[1] assert claims that seek to avoid and recover, as constructively fraudulent conveyances, all transfers of proceeds received by each defendant in

---

[1] Plaintiffs assert these claims in their capacities as successor indenture trustees of certain of the Debtors' prepetition notes, and pursuant to their fiduciary duties thereunder. Plaintiffs Deutsche Bank Trust Company Americas and Law Debenture Trust Company Of New York are the successor indenture trustees for certain series of Senior Notes; Plaintiff Wilmington Trust Company is the successor indenture trustee for the PHONES Notes.

connection with the LBO (together with the state law constructive fraudulent conveyance cases brought by Plaintiffs in twenty-one other states, the "Creditor SLCFC Claims").  Compl., ¶ 2.

The Honorable Kevin J. Carey, Chief United States Bankruptcy Judge of the United States Bankruptcy Court for the District of Delaware, has presided over the Tribune Bankruptcy Proceeding since the Debtors' chapter 11 filings in 2008.  On April 25, 2011, Chief Judge Carey issued an order providing that sections 362(a) or 546(a) of the Bankruptcy Code do not bar Plaintiffs from *commencing* state law constructive fraudulent conveyance claims against former Tribune shareholders (the "SLCFC Order," ¶¶ 2, 3, attached as Exhibit C to the Declaration of Christine A. Montenegro dated Tuesday, July 5, 2011, in Support of Plaintiffs' Motion for a Stay (the "Montenegro Declaration" or "Montenegro Decl.")).[2].  The SLCFC Order also directed that litigation of the Creditor SLCFC Claims be stayed in order for the Bankruptcy Court to address certain objections by parties in interest challenging proposed plans of reorganization.  *See*

---

[2] The SLCFC Order states, in part:

2. . . . "[T]he Debtors' creditors have regained the right, if any, to prosecute their respective state law constructive fraudulent conveyance claims against Step One Shareholders and/or Step Two Shareholders to recover stock redemption/purchase payments made to such shareholders in connection with LBO (collectively, the "Creditor SLCFC Claims").

3. To the extent the automatic stay of 11 U.S.C. § 362(a) stays the commencement of any Creditor SLCFC Claims, the automatic stay is hereby lifted to permit the filing of any complaint by or on behalf of creditors on account of such Creditor SLCFC Claims, including, without limitation, any complaint filed by any plaintiff in the Original Plaintiff Group [which includes the Plaintiffs in this action].

6. Absent further order of this Court, litigation commenced by the filing of any complaint . . . shall automatically be stayed in the applicable state court(s) where such complaint(s) are filed, or if not automatic in such state court(s), then application for the stay in accordance with the provisions of this Order shall be made by the Original Plaintiff Group . . . ; provided, however, that during such stay, any party . . . that files such a complaint may: (a) consistent with governing rules, amend such complaint; (b) complete service of such complaint; and (c) take such steps, including immediately pursuing discovery, as are necessary solely for the purpose of preventing applicable statutes of limitations or other time-related defenses from barring any Creditor SLCFC Claims.

8. Nothing in this Order shall prejudice or impair any claims or defenses of any defendant in any proceeding in respect of a Creditor SLCFC Claim . . . .

Montenegro Decl., Ex. C.

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

2

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

Montenegro Decl., Exhibit C, ¶ 6.  Plaintiffs hereby request that the Court stay the time for the Defendants to respond to the Complaint until the earlier of October 31, 2011, without prejudice to any further motion by Plaintiffs to alter or otherwise extend the Stay, or the Bankruptcy Court confirms a plan of reorganization, or any further Order of the Bankruptcy Court or this Court. Such a stay would be an appropriate and sensible exercise of the Court's discretion.

*First*, the SLCFC Order requires that this litigation be temporarily stayed.  Montenegro Decl., Ex. C, ¶ 6.  While Plaintiffs were permitted to initiate suit against Defendants to toll any applicable statute of limitations, Chief Judge Carey has not yet ruled on certain plan objections that could impact Plaintiffs' standing to pursue the Creditor SLCFC Claims.  Rather, recognizing that the Bankruptcy Court's confirmation of a plan of reorganization, and resolution of objections thereto, have the possibility of affecting Plaintiffs' claims, the Bankruptcy Court ordered that Plaintiffs' cases be stayed subsequent to their commencement.  Plaintiffs respectfully submit that this determination should be accorded due deference by this Court.  Montenegro Decl., Ex. C ¶¶ 6-9.

*Second*, Plaintiffs intend to file a motion in the next several weeks requesting that the Multidistrict Litigation Panel (the "MDL Panel") transfer and consolidate this action (the "MDL Motion") along with the other creditor SLCFC Claims Plaintiffs filed across the country against other Tribune shareholders who received proceeds from the LBO.[3]  Montenegro Decl. ¶ 16. Plaintiffs also request that when the Stay is lifted upon its termination, the Court set a schedule for Defendants to answer the Complaint or otherwise move, and for Plaintiffs to file briefs in opposition thereto.  The Court can properly exercise its discretion to hold this action in abeyance while the MDL Motion is resolved.  Under these circumstances, the Stay will promote judicial economy and efficiency, will not prejudice parties and is moderate in duration.  Absent MDL consolidation, numerous federal district courts will be forced to individually adjudicate duplicative

---

[3] Plaintiffs' motion seeking confirmation of their ability to file the MDL Motion, notwithstanding the SLCFC Order, was granted by the Bankruptcy Court on June 28, 2011. *See* Montenegro Decl. Ex. F.

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

motions and discovery disputes involving common questions of fact and law, all arising out of the single LBO transaction at issue.  By temporarily staying this action, the Court can prevent unnecessary expenditure of time and resources.

While the Stay will obviate the need for Defendants to answer or otherwise respond to the complaint, or engage in any substantive litigation of the merits, during the pendency of the stay, Plaintiffs may need to engage in limited discovery to ensure that former shareholders of Tribune who are subject to suit in this action are identified, properly named in the Complaint and effectively served with process in compliance with the potentially applicable statute of limitations and governing rules of civil procedure.  The SLCFC Order contemplated this necessity and specifically permitted Plaintiffs to conduct limited jurisdictional discovery during the pendency of the Stay.  *See* Montenegro Decl., Ex. C, ¶ 6.

Therefore, Plaintiffs request an order that expressly carves out of the Stay the ability for Plaintiffs to make a future motion before the Court to seek limited early discovery pursuant to Federal Rule of Civil Procedure 26(d)(1).  Plaintiffs also request that the Court, notwithstanding the Stay, require that Defendants enter an appearance in the action, so that either the Defendants or their counsel will be known and can readily be served with any further notices, orders, or other pleadings in the case.

In the event that the Court denies this motion, Plaintiffs respectfully request that the Court order the Defendants not to file any motions to dismiss until the parties convene for a case management conference and the Court enters a case management order.  Given the complexity of this action, the parties and the Court would benefit from postponing Defendants' motion practice in response to the Complaint until a coordinated and practical briefing schedule has been entered.

## FACTUAL BACKGROUND

### A.  The Tribune Bankruptcy Proceeding and the Competing Plans of Reorganization

On or about April 1, 2007, the board of directors of Tribune approved the LBO which resulted in the transfer of ownership of Tribune and its subsidiaries to a newly formed employee stock ownership plan.  Compl., ¶ 41.  "Step One" of the LBO closed on June 4, 2007, at which

4

K A S O W I T Z ,   B E N S O N ,   T O R R E S   &   F R I E D M A N   L L P
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

1   time certain shareholders received approximately $4.3 billion in exchange for their shares of

2   Tribune stock.  Compl., ¶ 6.  "Step Two" of the LBO was completed in December 2007, at which

3   time certain shareholders received approximately $4.0 billion in exchange for their shares of

4   Tribune common stock.  *Id.*

5       A year later, Tribune and many of its operating subsidiaries (collectively the "Debtors")

6   jointly filed for bankruptcy on December 8, 2008.  Compl., ¶ 91.  Upon the petition date, under

7   Bankruptcy Code section 546(a), a two year statute of limitations period began to run for the

8   Debtors' estates to commence state law fraudulent conveyance claims.  While the Debtors' estates

9   or their representatives were permitted to file such actions between 2008 and 2010, Plaintiffs and

10  other creditors were barred from pursuing state law constructive fraudulent conveyance claims

11  during this two-year period.  *See e.g., In re Integrated Agric. Inc.*, 313 B.R. 419, 427-428 (Bankr.

12  C.D. Ill. 2004).

13      On November 1, 2010, with leave of the Bankruptcy Court and on behalf of the Debtors'

14  estates, the Official Committee of Unsecured Creditors (the "Committee") initiated an adversary

15  proceeding against, *inter alia*, all of Tribune's shareholders who received proceeds from the LBO,

16  including Defendants in this instant action, alleging that the LBO was an *intentional* fraudulent

17  conveyance (the "Committee Action") (*In re Tribune Co.*, No. 08-13141 (KJC) (Del. Bankr.);

18  *Official Committee of Unsecured Creditors of Tribune Co. v. FitzSimmons*, Adv. Pro. No. 10-

19  54010 (KJC) (Del. Bankr.)).  The Committee Action does not include state law *constructive*

20  fraudulent conveyance claims.  The Committee filed constructive fraudulent conveyance claims

21  against the LBO lenders.  The statutory period during which the Debtors had exclusive standing to

22  bring state law constructive fraudulent conveyance claims expired on December 8, 2010 (two

23  years after the petition date), at which time Plaintiffs, and other creditor parties, regained their

24  ability to commence such actions on their own behalf.  Montenegro Decl., ¶ 3.

25      On February 4, 2011, the Debtors, the Committee, and certain lender parties in interest

26  filed their Second Amended Joint Plan of Reorganization for the Debtors (the "DCL Plan").

27  Montenegro Decl., ¶ 4.  On February 25, 2011, certain noteholders of the Debtors, including

28

Memorandum of Points and Authorities In Support of Motion To Stay Defendants' Time To Respond To The
Complaint In This Action Or Commence Motion Practice;
Case No. CV 11-2661-EMC

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

1   Plaintiffs herein, filed a competing plan of reorganization (the "Noteholder Plan" and together

2   with the DCL Plan, the "Competing Plans"). Montenegro Decl.,¶ 5. Both Competing Plans

3   included a mechanism by which state law constructive fraudulent conveyance claims, such as

4   those asserted in this action, could be transferred to and litigated by a Creditors' Trust, and

5   proceeds from such actions would flow to beneficiaries according to terms of the Competing

6   Plans. The Robert R. McCormick Tribune Foundation and the Cantigny Foundation (together, the

7   "Plan Opponents") objected to both the Competing Plans because they claimed that "(a) the

8   proposed Creditors' Trust would not have standing to bring the Constructive Fraud Claims against

9   the selling Shareholders, and (b) section 546(e)'s safe harbor provision preempts all attempts to

10  assert the Constructive Fraud Claims." Montenegro Decl.,¶ 6.

11      The Bankruptcy Court held a two-plus week evidentiary trial on the Competing Plans of

12  reorganization, and closing argument occurred on June 27, 2011. The Bankruptcy Court has

13  reserved decision. Montenegro Decl., ¶ 8.

14      **B. The SLCFC Order and Commencement of Plaintiffs' 50 Actions**

15      Assuming *arguendo* that Plaintiffs' Creditor SLCFC Claims are subject to a four year

16  statute of limitations period applicable in certain states, the time for filing suit against the "Step

17  One" shareholders would arguably have expired on or shortly after June 4, 2011. On March 1,

18  2011, to prevent state law causes of action from possibly becoming time-barred while the

19  litigation over the Competing Plans continued in front of Chief Judge Carey, Plaintiffs moved the

20  Bankruptcy Court for an order (i) determining that eligible creditors regained the right to prosecute

21  the Creditor SLCFC Claims because the statute of limitations for the Debtors to commence state

22  law fraudulent conveyance actions expired on December 8, 2010, and the estates failed to assert

23  such claims; (ii) determining that the automatic stay does not bar commencement of the Creditor

24  SLCFC Claims by Plaintiffs; and (iii) granting leave from a mediation order by the Bankruptcy

25  Court to permit commencement of the Creditor SCFCL Claims (the "Standing Motion" attached

26  as Exhibit A to the Montenegro Decl.). On April 25, 2011, the SLCFC Order granted the Standing

27  Motion and permitted Plaintiffs to commence state law constructive fraudulent conveyance

28

6

litigations, and pursue discovery as necessary to prevent any applicable statute of limitations or time-related defenses from barring Plaintiffs' claims – so long as Plaintiffs filed an application for stay after the litigation commenced.  *See* Montenegro Decl., Exhibit C, ¶¶ 2-4, 6.  At oral argument on the Standing Motion, Judge Carey stated:

> … I would be willing to say, to the extent the [Bankruptcy Code section 362 automatic] stay does apply, it's lifted, solely to permit the commencement of such [state law] litigation.  But I would like the memorialization, until further order of the Court … <u>that no litigation should be pursued or prosecuted, because I am concerned about whether there would be implications with respect to any decision I might make in connection with confirmation of a plan</u>, and I want to reserve, to myself and to the parties who have objected to confirmation, to make whatever arguments they have to make without being hampered by an order that I'm entering here.  I don't mean to dispose of any of those rights.

Transcript of Proceedings before Judge Kevin J. Carey, March 22, 2011 at pp. 100:19-101:5 (attached as Exhibit B to the Montenegro Decl.) (emphasis added).

On June 2, 2011, Plaintiffs commenced this action, and served Defendants with the Complaint on June 22, 2011.  Montenegro Decl., ¶ 13.  Plaintiffs also filed forty-nine substantially similar complaints, commencing suits in twenty-one other states.  *Id.*  All of the lawsuits were filed in federal district courts, with the exception of ten cases filed in New York, Delaware and California state court.[4]  *Id.*  These other litigations include constructive fraudulent conveyance claims against named defendants, and, in certain litigations, class action claims against a defendants' class.  *Id.*  Plaintiffs intend to move for transfer and consolidation of the federally filed cases before the Judicial Panel on Multidistrict Litigation as soon as possible.  Montenegro Decl., ¶ 16.  MDL consolidation of these cases will conserve the resources of this Court and the parties, in addition to preventing inconsistent pretrial rulings.  Absent consolidation and transfer, Plaintiffs will be forced to respond piecemeal to duplicative motions potentially filed by more than 1,000 defendants.  Montenegro Decl., ¶ 14.

---

[4] Plaintiffs were required to file multiple suits within certain jurisdictions because in some circumstances Plaintiffs' counsel were conflicted from suing particular defendants, and it was thus necessary to initiate separate litigations prosecuted by different counsel.

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

## **ARGUMENT**

Temporarily staying this case for approximately four months – while the Tribune Bankruptcy Proceeding concludes litigation over plan confirmation and the Plaintiffs' forthcoming MDL motion is pending – is well within this Court's sound discretion. A court "may order a stay of the action pursuant to its power to control its docket and calendar and to provide for a just determination of the cases pending before it." *Leyva v. Certified Grocers of California, Ltd.,* 593 F.2d 857, 864 (9th Cir. 1979). The Stay is appropriate and should be granted.

**I.     The Litigation Over Tribune's Plan Confirmation Substantially Impacts This Action, and the SLCFC Order Requiring The Stay Should Be Given Due Deference**

Courts recognize that a stay is appropriate where, as here, another pending matter could have a substantial impact on that litigation. *See Leyva*, 593 F.2d at 863-864 ("A trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case."); *see also Sequoia Forestkeeper and Earth Island Inst. v. U.S. Forest Service*, Case No. CV F 07-1690 LJO DLB, 2008 U.S. Dist. LEXIS 40922, *14 (E.D. Cal. 2008) (finding that judicial economy and efficiency was served by staying an action where another proceeding had "the potential to advance significantly the resolution of the claims currently before th[e] Court"). The connection between the Bankruptcy Court's pending determination of the Plan Opponents' objection and the Creditor SLCFC Claims asserted here, justifies the Stay.

The Plan Opponents submit that neither of the Competing Plans can be confirmed because they provide for the litigation of the Creditor SLCFC Claims, which according to the Plan Opponents violates provisions of the Bankruptcy Code. Montenegro Decl., ¶ 7. Specifically, the Plan Opponents argue that Plaintiffs lack standing to bring the Creditor SLCFC Claims because the Debtors retained the exclusive ability to recover the LBO payments to the shareholders when the Committee Action was brought on the Debtors' behalf. *Id.* Moreover, the Plan Opponents object to the Competing Plans based on their belief that Bankruptcy Code section 546(e) bars state law causes of action to recover payments to stockholders in exchange for the transfer of securities.

8

K A S O W I T Z ,   B E N S O N ,   T O R R E S   &   F R I E D M A N   L L P
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

1    *Id.* Plaintiffs believe that the Plan Opponents are wrong on all counts, and have challenged the

2    objection in the Bankruptcy Proceeding. However, given the potential impact of the plan

3    confirmation process on the Creditor SLCFC Claims, the Stay of this action pending a

4    determination of the Plan Opponents' objection is the most prudent course of action.

5        Chief Judge Carey recognized the potential for Plan litigation to impact, if not dispose of,

6    Plaintiffs' ability to successfully prosecute the Creditor SLCFC Claims. Yet, the Bankruptcy

7    Court was cognizant that these causes of action should not be allowed to become time-barred

8    during the period required for the Bankruptcy Court to confirm a plan of reorganization.

9    Montenegro Decl., Ex. C, ¶ 6. Therefore, the SLCFC Order requires that a

10

11        [State Shareholder Avoidance Actions] commenced by the filing of any complaint
     … shall automatically be stayed in the applicable state court(s) where such complaint(s)

12   are filed, or if not automatic in such state court(s), then application for the stay in
     accordance with the provisions of this Order shall be made by the [] Plaintiff Group or any

13   other creditor that files its own complaint ….

     *See id.* Plaintiffs, therefore, respectfully request that this Court defer to the SLCFC Order

14   and enact Chief Judge Carey's ruling that this action should be held in abeyance while the

15   litigation over the Competing Plans and the Plan Opponents' objection is resolved.

16   **II.    The Stay Is Appropriate Given Plaintiffs' Forthcoming MDL Motion**

17        Plaintiffs intend to file the MDL Motion to consolidate and transfer the nearly 40 cases

18   Plaintiffs commenced in numerous federal jurisdictions for coordinated pretrial treatment pursuant

19   to 28 U.S.C. § 1407. Montenegro Decl., ¶ 16. Federal courts routinely stay preliminary pretrial

20   proceedings while a motion to transfer is pending before the MDL Panel. *See Good v. Prudential

21   Ins. Co. of Am.*, 5 F. Supp. 2d 804, 809 (N. D. Cal. 1998) ("Courts frequently grant stays pending a

22   decision by the MDL Panel"); *Rivers v. The Walt Disney Co.*, 980 F. Supp. 1358, 1362 (C.D. Cal

23   1997) (granting motion to stay proceedings pending MDL Panel's resolution of transfer motion).

24   The factors relevant to deciding whether to grant a stay strongly favor issuance of the Stay here.

25   *See Rivers* at 1360 (C.D. Cal. 1997) (applying the following factors in determining whether to stay

26   litigation: "(1) potential prejudice to the non-moving party; (2) hardship and inequity to the

27

28

9

1    moving party if the action is not stayed; and (3) the judicial resources that would be saved by

2    avoiding duplicative litigation if the cases are in fact consolidated.").

3           **A.**      **The Stay Will Conserve Judicial Resources**

4           Entry of the Stay will conserve judicial resources because Plaintiffs believe that the MDL

5    Motion is likely to be granted.  Thus, pre-consolidation proceedings in the coordinated cases will

6    be rendered duplicative and inefficient.  Plaintiffs expect the MDL Motion to be granted because,

7    as the MDL Panel has recognized, consolidation is called for when "the prevalence of common

8    factual issues and similar class allegations … [prevents] duplication of discovery and eliminate[s]

9    the possibility of inconsistent or overlapping class determinations."  *In re U.S. Fin. Sec. Litig.*, 375

10    F. Supp. 1403, 1404 (J.P.M.L. 1974); *see also In re Lehman Bros. Holdings, Inc., Sec. & Emp. Ret.*

11    *Income Sec. Act (ERISA)*, 598 F. Supp. 2d 1362, 1364 (J.P.M.L. 2009) (transfer of seventeen

12    actions pending in five districts warranted when the actions were "expected to focus on a

13    significant number of common events, defendants, and/or witnesses," that is, whether the

14    "defendants allegedly made materially false and/or misleading statements which had a negative

15    impact on [the] securities.").  Here, absent centralization there will be nearly forty actions

16    proceeding in numerous federal district courts involving identical factual allegations and claims,

17    and encompassing individual defendants and putative classes of similarly situated parties across

18    the country, all of whom cashed out their Tribune stock, or otherwise received proceeds, in

19    connection with a single LBO.

20           By granting this motion, judicial resources will, by definition, be conserved.  *See Rivers*,

21    980 F. Supp. at 1361-62.  When the MDL Panel is considering a motion to transfer, if the

22    transferor court expends resources on the case and the transfer subsequently occurs, the court "will

23    have needlessly expended its energies familiarizing itself with the intricacies of a case that would

24    be heard by another judge." *Id.* at 1360.  In the same vein, efforts "concerning case management

25    will most likely have to be replicated by the [transferee] judge…." *Id.* at 1361.  Another strong

26    consideration favoring centralization is the specter of conflicting decisions regarding class

27    certification.  *See e.g., In re NorthStar Educ. Fin. Inc.*, 588 F. Supp. 2d 1370 (J.P.M.L. Dec. 3,

28

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

1   2008) (centralizing actions to prevent inconsistent pretrial rulings especially because of class

2   certification issues).  Thus, stays are frequently granted pending a decision by the MDL Panel to

3   transfer a case in the interest of judicial economy and to avoid inconsistent results.  *See, e.g.,*

4   *Nielson v. Merck & Co.*, No. C 07-00077 WHA, 2007 U.S. Dist. LEXIS 21438, at *6 (N.D. Cal.

5   Mar. 8, 2007) (granting stay pending MDL motion in part to "avoid[] the possibility of

6   inconsistent rulings").  Therefore, where, as here, the MDL Panel is expected to rule on the

7   transfer of actions, and the instant case is only in its very preliminary stages, judicial economy and

8   the conservation of resources weigh overwhelmingly in favor of a stay.

9           **B.       The Balance of Harms Favors Granting the Requested Stay**

10          As courts have recognized, failure to stay one of multiple actions pending determination of

11  an MDL Motion imposes unnecessary burden and hardship on the party required to litigate in

12  multiple forums.  *See Nielson v. Merck & Co.*, No. C07-00076 MJJ, 2007 U.S. Dist. LEXIS

13  21250, *6 (N.D. Cal. 2007) (noting prejudice to defendant "from being forced to litigate the same

14  jurisdictional issue in multiple forums" and granting motion to stay pending a transfer decision by

15  the J.P.M.L.).  These same considerations compel a stay here.  It would impose substantial

16  hardship on Plaintiffs to litigate motions to dismiss, motions for class certification, and other

17  pretrial motions in as many as twenty jurisdictions.  Moreover, the risk of conflicting rulings on

18  these issues could be prejudicial to Plaintiffs.

19          On the other hand, however, Defendants will not be prejudiced if this Court enters the

20  requested Stay.  To the contrary, Defendants should have no less reason to avoid duplicative,

21  wasteful, and potentially conflicting pretrial proceedings as Plaintiffs.  *See Rivers*, 980 F. Supp. at

22  1361 (transfer of multiple actions would potentially subject any pretrial rulings already made in

23  the transferor court to be reconsidered by the transferee court); *In re Upjohn Co. Antibiotic*

24  *Cleocin Prods. Liab. Litig.*, 81 F.R.D. 482, 486-487 (E.D. Mich. 1979) (requiring transferee court

25  to harmonize inconsistent pretrial orders after consolidation).  "Granting a stay does not cause the

26  nonmoving party undue prejudice when that party has not invested substantial expense and time in

27

28

K A S O W I T Z ,   B E N S O N ,   T O R R E S   &   F R I E D M A N   L L P
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

1    the litigation." *Microsoft Corp. v. TiVo Inc.*, Case No. 10-CV-00240-LHK, 2011 U.S. Dist. LEXIS

2    52619, *17 (N.D. Cal. May 6, 2011) (granting motion to stay).

3          Moreover, the stay requested by Plaintiffs is permissible because the stay is "of reasonable

4    length" and will expire within "a reasonable time." *Sequoia* Forestkeeper, 2008 U.S. Dist. LEXIS

5    40922 at *16 (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 256, 57 S. Ct. 163, 81 L. Ed. 153 (1936)).

6    The stay will last no more than four months, until the earlier of December 31, 2011 or a further

7    order by the Bankruptcy Court or this Court.[5] Stays of similar duration have been granted. *See,*

8    e.g., *United States v. One Hewlett Packard Pavilion Laptop*, No. C 09-02664 WHA, 2009 U.S.

9    Dist. LEXIS 92489, *3 (N.D. Cal. 2009) (granting stay for 180 days).

**III.    Plaintiffs Should Be Permitted To File A Rule 26(d)(1) Motion Seeking Leave To
10         Conduct Limited Discovery to Confirm That All Proper Parties Have Been
           Identified, Named, And Served with Process During the Pendency of The Stay**

11

12          It is imperative that Plaintiffs be allowed during the pendency of the Stay to

13    conduct limited discovery, if necessary, on Defendants and third-parties, to ensure that each

14    shareholder who received a cash transfer on account of the LBO is identified, properly named in

15    the action, and provided with effective service of process.  Therefore, Plaintiffs ask that the Stay

16    be structured so as to provide Plaintiffs leave to make a Rule 26(d)(1) motion for limited discovery

17    at a further time if necessary.

18          While Plaintiffs utilized the best information available regarding the shareholder parties to

19    the LBO in order to initiate this action, toll any applicable statute of limitations and effectuate

20    service, further discovery will likely be required at the outset of this case to confirm that the

21    proper parties have been accurately named and served.  Thus, even if the Stay is granted, Plaintiffs

22    ask that the Court require Defendants to enter an appearance in the case, such that Defendants or

23    their counsel are known and can be served with further notices, orders, or pleadings in this action.

24          As described above, on April 25, 2011, Plaintiffs received leave of the Bankruptcy Court to

25    assert the Creditor SLCFC Claims and confirmation that initiating this action would not violate the

26    [5] If it appears that the plan confirmation issues relating to the Creditor SLCFC Claims will remain
      unresolved by the Bankruptcy Court by Dec. 31, 2011, Plaintiffs reserve the right to seek to extend
27    the stay.

12

28

1    automatic stay provisions under Bankruptcy Code section 362(a).  Montenegro Decl., Ex. C, ¶¶ 2,

2    3.  On April 29, 2011, Plaintiffs subpoenaed the Committee to obtain access to information

3    regarding the identities of the shareholders who received cash transfers pursuant to the LBO, their

4    locations, and the amount of the cash transfers the shareholders received.  Montenegro Decl., ¶ 12.

5    The Committee collected this information by issuing over 1,600 subpoenas in November 2010 to

6    more than 900 separate entities.  *Id.*  Plaintiffs received this voluminous amount of data from the

7    Committee only eight days before they were compelled to file the Creditor SLCFC Claims.  *Id.*

8    The Committee is still receiving new and updated information regarding the identities of these

9    shareholders.  *Id.*

10           Because the requisite information was provided by the Committee near the eve of

11   Plaintiffs' filing the Complaint in this action and it is Plaintiffs' understanding that the Committee

12   is still receiving new and updated information regarding the identities of these shareholders and

13   other relevant information, Plaintiffs may require the opportunity to conduct limited discovery of

14   Defendants and third-parties to confirm that all shareholders subject to suit in this action have

15   been identified, properly named in the Complaint and effectively provided with service of process.

16   Montenegro Decl.,¶ 12.  Plaintiffs believe that such discovery should be permitted during the

17   requested Stay and is appropriate under Rule 26(d)(1), as it addresses threshold matters such as

18   jurisdiction and proper service of process, and is not burdensome in scope.  *See* F.R.C. P. 26(d)(1)

19   ("A Party may not seek discovery from any source before the parties have conferred as required by

20   Rule 26(f), except … when authorized by these rules, by stipulation, or by court order"); *see e.g.,*

21   *VPR Int. v. Does 1-17*, Case No. C 11-01494 LB, 2011 U.S. Dist. LEXIS 45118, *5-6 (N.D. Cal.

22   Apr. 15, 2011) (plaintiff showed good cause to engage in early discovery to identify proper

23   defendants); *IO Group, Inc. v. Doe*, Case No. 10-4377 SC, 2010 U.S. Dist. LEXIS 114039, *4

24   (N.D. Cal. Oct. 15, 2010) (same).

25           The SLCFC Order explicitly contemplated Plaintiffs engaging in such discovery during the

26   pendency of the Stay, *see* Montenegro Decl., Ex. C, ¶ 6, and this provision, like the other

27   components of the SLCFC Order should be afforded due deference.  Therefore, for the reasons

28

K A S O W I T Z ,   B E N S O N ,   T O R R E S   &   F R I E D M A N   L L P
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

13

K A S O W I T Z ,   B E N S O N ,   T O R R E S   &   F R I E D M A N   L L P
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

1   stated above, Plaintiffs request that the Court grant the Stay, however provide that the terms of the

2   Stay do not bar, but indeed permit, Plaintiffs to file a Rule 26(d)(1) motion seeking leave of the

3   Court to conducted early discovery limited to the topics that will be set forth in Plaintiffs'

4   forthcoming Rule 26(d)(1) motion, as well as permit Plaintiffs to amend the Complaint pursuant to

5   Rule 15 and, if appropriate, drop or reassign defendants from one action to another as governed by

6   Rules 21 and 41.

7   **IV.    Should The Court Deny The Stay Motion, Plaintiffs Request That Defendants Be
8            Prevented From Filing Any Answers Or Other Pleadings Responsive To The
             Complaint Until Such Time As The Parties Have Convened For A Case Management
9            Conference And The Court Enters A Case Management Order**

10          In the event that the Court denies Plaintiffs' request for the Stay, Plaintiffs request that the

11  Court postpone the filing of any answers or dispositive motions by Defendants until such time that

12  a case management conference can be convened and an order granting a case management

13  schedule entered.  In light of the complexity of the action, the number of individually named

14  defendants, and the class action component to the case, it would be in the best interests of the

15  Court and the parties for briefing on dispositive motions and any other motion practice to be

16  conducted pursuant to a case management schedule entered by this Court, as opposed to multiple

17  motions to dismiss being litigated piecemeal and without coordination.

18

19

20

21

22

23

24

25

26

27

28

Memorandum of Points and Authorities In Support of Motion To Stay Defendants' Time To Respond To The
Complaint In This Action Or Commence Motion Practice;
Case No. CV 11-2661-EMC

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

K A S O W I T Z ,   B E N S O N ,   T O R R E S   &   F R I E D M A N   L L P
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

## **CONCLUSION**

For each of the foregoing reasons, Plaintiffs request that the Court (i) grant Plaintiffs' motion for a Stay of Defendants' time to respond to the Complaint in this action or commence motions practice until the earlier of (a) October 31, 2011, without prejudice to any further motion by Plaintiffs to alter or otherwise extend the Stay, (b) order by the Bankruptcy Court in the Bankruptcy Proceedings confirming a plan of reorganization, or (c) further Order of the Bankruptcy Court or this Court; (ii) require each Defendant to enter an appearance in the action, so that they or their counsel are known, in order to better facilitate service of further notices, orders, or pleadings upon them in the action; (iii) order that the Stay does not bar, but instead permits, (a) Plaintiffs to amend Complaint or file a motion for leave to amend the Complaint, (b) Plaintiffs to voluntarily dismiss this action or one or more defendants pursuant to Federal Rule of Civil Procedure 41, (c) Plaintiffs to move to add or drop a party or to sever any claim against a party pursuant to Federal Rule of Civil Procedure 21, (d) Plaintiffs to file their MDL Motion, and (e) Plaintiffs to file a Rule 26(d)(1) motion seeking leave of the Court to conduct early discovery limited to confirming that shareholders who received cash transfers in connection with the LBO and are subject to suit in this action have been correctly identified, properly named in the Complaint, and provided with effective service of process; and (iv) direct that upon the lifting or termination of the Stay, the schedule for answering or otherwise responding to the Complaint will be set by this Court, or the transferee court in the MDL.  In the event that the Court denies Plaintiffs' requested Stay, Plaintiffs ask that the Court require a case management order be entered which provides a briefing schedule for the litigation, prior to any Defendant being permitted to answer the Complaint or file an otherwise responsive pleading.

15

1                                                   Respectfully submitted,

2   DATED:  July 5, 2011

3                                  By:_____/s/ Emily E. de Ayora_____

4                                    Emily E. de Ayora (SBN 250349)
Brendan Dolan (SBN 126732)
KASOWITZ, BENSON,
      TORRES & FRIEDMAN LLP
Email:  bdolan@kasowitz.com
101 California Street, Suite 2300
San Francisco, CA 94111
Telephone:  (415) 421-6140
Facsimile:  (415) 398-5030

Sheron Korpus
      (New York State Bar # 2810372)
Christine A. Montenegro
      (New York State Bar # 3969276)
David Rosner
      (New York State Bar # 2333755)
Matthew B. Stein
      (New York State Bar # 4179479)
KASOWITZ, BENSON,
      TORRES & FRIEDMAN LLP
1633 Broadway
New York, New York 10019
Telephone:  (212) 506-1700
Facsimile:  (212) 506-1800
Email:  skorpus@kasowitz.com
      cmontenegro@kasowitz.com
      drosner@kasowitz.com

Attorneys for Plaintiffs
Deutsche Bank Trust Company Americas
Law Debenture Trust Company of New York
Wilmington Trust Company

Memorandum of Points and Authorities In Support of Motion To Stay Defendants' Time To Respond To The Complaint In This Action Or Commence Motion Practice;
Case No. CV 11-2661-EMC